# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JULIE L. VORWERCK, :

                Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant. :

Case No. 3:11-cv-375

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938);

*Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof

shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on February 15, 2007, alleging disability from January 1, 2001, due to brittle diabetes, hypothyroidism, diabetic neuropathy, coronary artery disease, hypertensive cardiovascular disease, hypertension, gout, hyperlipidemia, and GERD. See PageID 168-69; 170-72; 183. The Commissioner denied Plaintiff's applications initially and on reconsideration. PageID 120-26; 127-33; 135-41; 142-48. Administrative Law Judge Amelia Lombardo held a hearing, PageID 71-108, following which she determined that Plaintiff is not disabled. PageID 50-69. The Appeals Council denied Plaintiff's request for review, PageID 29-35, and Judge Lombardo's decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge Lombardo found that she met the insured status requirements of the Act through June 30, 2006. PageID 56, ¶ 1. Judge Lombardo also found that Plaintiff has severe bilateral carpal tunnel syndrome and depression, but that she does not have an impairment or combination of impairments that meets or equals the Listings. *Id.*, ¶ 3; PageID 60, ¶ 4. Judge Lombardo found further that Plaintiff has the residual functional capacity to perform a limited range of work at all exertional levels. *Id.*, ¶ 5. Judge Lombardo then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. PageID 64, ¶ 10. Judge Lombardo concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. PageID 65.

Plaintiff was hospitalized April 27 through May 2, 2004, during which time she underwent a bilateral salpingo-oophorectomy and lysis of bowel adhesions which Dr. Barhan performed. PageID 238-55. In June, 2004, Dr. Barhan reported that Plaintiff was six weeks post-op and that she complained only of severe hot flashes and he prescribed hormone replacement therapy. PageID 256.

The record contains the office notes of treating physician Dr. Timpone dated March 22, 2004, through January 6, 2006. PageID 328-37. Those notes reveal that Dr. Timpone treated Plaintiff for various medical conditions including chest pain, dyspnea, probable reaction to sand flea bite, back pain, anxiety, and left flank pain. *Id.*

Plaintiff was hospitalized in February, 2007, for treatment of unstable angina. PageID 338-60. At that time, it was noted that Plaintiff had a history of coronary artery disease and that she was status post percutaneous intervention of the LAD in September, 2005. *Id.* A cardiac catheterization performed during the February, 2007, hospitalization revealed a patent proximal LAD stent, nonobstructive CAD involving the LAD, left circumflex, and right coronary arteries, and normal LV function. *Id.*

Examining physician Dr. Danopulos reported on April 17, 2007, that Plaintiff complained of diabetes, hypertension, chest pain and effort-related shortness of breath, thyroid problems, and depression which she alleged kept her from working. PageID 360-68. Dr. Danopulos also reported that Plaintiff was sixty-two and one-half inches tall, weighed one-hundred seventy-four and one half pounds, her blood pressure was 120/70, she displayed normal mental state and behavior, moved freely, had normal heart tones, and that her lung examination was normal. *Id.* Dr. Danopulos noted that Plaintiff had full ranges of motion of her upper and lower extremities, her spine was painless to pressure, and that her neurological examination was normal. *Id.* Dr.

5

Danopulos also noted that Plaintiff's complaints of chest pain were not typical for angina pectoris, the objective findings were well-controlled recent onset diabetes, well-controlled blood pressure, non-specific chest pain with normal exercise Sestamibi myocardial perfusion study with normal ejection fraction, being on thyroid supplemental therapy, and depression with anxiety neurosis. *Id.* Dr. Danopulos opined that Plaintiff's ability to perform work-related activities was not affected or restricted by her somatic complaints and that her depression with anxiety neurosis was interfering with her daily life and making her fear the chest pain and shortness of breath in a exaggerated way. *Id.*

Examining psychologist Dr. Jones reported on May 21, 2007, that Plaintiff graduated from high school, completed a certificate program in computers, had no significant history of psychiatric or psychological therapy, and that she characterized her physical and mental health as poor. PageID 369-74. Dr. Jones also reported that Plaintiff displayed sad to anxious facial expressions, her general body movements were slow to normal, her speech was normal although she was overly detailed as an historian and tended to babble on and on, her stream of thought was disjointed, her thought association proved circumstantial, her presenting demeanor was defeated, resigned, apathetic, and dysphoric, and that her affect was sad. *Id.* Dr. Jones noted that Plaintiff evidenced no overt signs of nervous tension, was preoccupied with her symptomatology, evidenced a degree of confusion, presented as distracted with regard to her degree of consciousness, was oriented, and that her contact with reality was judged as adequate. *Id.* Dr. Jones identified Plaintiff's diagnoses as major depression, recurrent, and psychological factors affecting physical condition and she assigned Plaintiff a GAF of 53. *Id.* Dr. Jones opined that Plaintiff's abilities to relate to others, to understand, remember, and follow instructions, and to withstand the stress and pressures associated with day-to-day work activity were moderately

limited and her abilities to maintain attention, concentration, persistence, and pace were mildly limited. *Id.*

The record contains treating endocrinologist Dr. Stone's office notes dated September 29, 2006, through October 11, 2007. PageID 407-28. Those notes reveal that Dr. Stone treated Plaintiff for diabetes mellitus, hypothyroidism, and gout. *Id.* On October 11, 2007, Dr. Stone reported that he first saw Plaintiff on September 9, 2003, her diabetes was rather easy to control, her hypothyroidism was well-controlled and not disabling, she had some diabetic neuropathy and took an anti-depressant which controlled her pain, and that she did not have any bad results from diabetic neuropathy. *Id.* Dr. Stone also reported that Plaintiff did not have any disability from her cardiovascular disease, her blood pressure was well-controlled, her gout has been well-controlled, her hyperlipidemia was not well-controlled, she had some GERD and took medication to control it, her mental status was fairly good, and her depression had been reasonably well-controlled. *Id.* Dr. Stone noted that Plaintiff had heart disease and diabetes and so there were a lot of jobs for which she wouldn't be a candidate, that anything requiring heavy lifting or repetitive movement or the ability to lift and carry were not things that she would be able to do, and that she was employable. *Id.* Dr. Stone also noted that Plaintiff was not significantly limited in her social interactions and she did not have any episodes or spells. *Id.*

The record contains treating physician Dr. Togliatti's office notes dated February 11, 2008, to May 5, 2009, PageID 439-82; 579-81. Those notes reveal that Dr. Togliatti treated Plaintiff for various medical conditions including diabetes, arteriosclerotic heart disease, depression, upper respiratory infection, hypertension (controlled), hyperlipidemia, hypothyroidism, lower extremity neuropathy, and urinary tract infection. *Id.*

The record contains the office notes of treating cardiologist Dr. Pandrangi dated September 19, 2005, through August 13, 2009. PageID 485-569; 571-78; 590. On June 8, 2009, Dr. Pandrangi reported that had had treated Plaintiff since September 19, 2005, her diagnoses were coronary artery disease, diabetes mellitus, hypertension, gastroesophageal reflux disease, and hereditary coproporhygia, her prognosis was guarded, she showed symptoms of anginal equivalent pain, shortness of breath, fatigue, weakness, palpitations, and sweatiness, and that she had primary symptoms of chest pain and dyspnea which occurred every day precipitated by physical exertion and emotional stress. PageID 570. Dr. Pandrangi also reported that Plaintiff had a ninety percent stenosis of her left anterior descending coronary artery, underwent cardiac catheterization twice in September, 2005, and February, 2007, and has received prescription medication therapy. *Id.* Dr. Pandrangi noted that in an eight-hour day, Plaintiff was not able to sit for more than two hour nor stand/walk for more than one hour, that she should never lift/carry any weight, should avoid noise, fumes, temperature extremes, pushing, kneeling, bending, and stooping, and that her symptoms occurred constantly, causing frequent interference with her attention and concentration. *Id.* Dr. Pandrangi also noted that Plaintiff was able to tolerate only a low degree of work-related stress, her symptoms would increase if she were placed in a competitive work environment, and that diabetic neuropathy affected the sensation in her hands. *Id.*

The record contains treating physician Dr. Frahangi's office notes dated June 11, through September 28, 2009. PageID 594-641. Those notes reveal that Dr. Frahangi treated Plaintiff primarily for her insulin-dependent diabetes, but also noted her complaints of hand pain, fibermyalgia [sic], benign hypertension, hyperlipidemia, fatigue, malaise, drug allergy, coronary

8

artery disease, chest pain, and shortness of breath. *Id.* The notes reveal further that Dr. Frahangi monitored Plaintiff's use of insulin and frequently encouraged Plaintiff to be compliant. *Id.*

Plaintiff received treatment from retinal physician Dr. Buerk during the period January 7-14, 2010. PageID 643-53. Dr. Buerk treated Plaintiff for complaints of increased blurriness and Dr. Buerk identified Plaintiff's diagnoses as histoplasmosis, retinal hemorrhage, and retinal edema. *Id.*

The record contains additional evidence which was not before Judge Lombardo, but was submitted to the Appeals Council. See PageID 654-805. However, since the Appeals Council denied Plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of Judge Lombardo's decision. *See Bass v. McMahon,* 499 F.3d 506, 512-13 (6th Cir. 2007), *citing, Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to follow the treating physician rule, by failing to properly evaluate her credibility, and by relying on the VE's testimony that was in response to an improper hypothetical question. (Doc. 10).

In support of her first Error, Plaintiff argues that the Commissioner erred by properly evaluating treating physician Dr. Pandrangi's opinion.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to

---

[1] FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

After noting that Dr. Pandrangi essentially opined that Plaintiff is disabled/unemployable, Judge Lombardo declined to give the opinion controlling or even deferential weight on the basis that the opinion was not supported by objective finding and was inconsistent with other evidence in the record. PageID 61.

A review of Dr. Pandrangi's office notes reveals that he reported few, if any, objective clinical findings. Further, Dr. Pandrangi's notes reveal that he found that Plaintiff's cardiac rhythm was regular, 12-lead EKGs were normal with indications of a probable old infarct, and she had no murmurs, gallops, rubs, or bruits. Indeed, many of Dr. Pandrangi's notes are recitations of Plaintiff's subjective complaints. In spite of her complaints, Dr. Pandrangi frequently described Plaintiff's condition as stable and he frequently advised Plaintiff to increase her exercise as much as possible, advised her to start water aerobics, and encouraged her to start looking for a job and become more physically active.

In addition, Dr. Pandrangi's opinion is not supported by the objective medical test results. For example, a February, 2007, cardiac catheterization revealed, at worst, nonobstructive coronary artery disease involving the LAD, the left circumflex, and the right coronary arteries, as well as a patent proximal LAD stent and normal LV function. Additionally, as noted above, the 12-lead EKGs that Dr. Pandrangi performed in his office during his examinations of Plaintiff were normal with indications of, at worst, an old infarct.

Finally, Dr. Pandrangi's opinion is inconsistent with the other evidence. For example, treating physician Dr. Stone reported that Plaintiff did not have any disability from her cardiovascular disease and that while he opined that there may be jobs which Plaintiff was not able to perform, she was employable. Further, Dr. Danopulos opined that Plaintiff's abilities to perform work-related activities was not affected or restricted by her somatic complaints. Finally, Dr. Pandrangi's opinion is inconsistent with the opinions of the reviewing physicians. See PageID 430-37; 112-13.

Under these circumstances, the Commissioner did not err by failing to give Dr. Pandrangi's opinion controlling or even deferential weight.

Plaintiff argues next that the Commissioner erred by failing to properly assess her credibility.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation omitted). Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

In *Felisky v. Bowen,* 35 F.3d 1027, 1039-40 (6th Cir. 1994), the Court set out seven (7) factors which the ALJ is to consider when evaluating a claimant's subjective complaints. The Court derived those factors from 20 C.F.R. §404.1529(c)(3). *Id.* However, while the *Felisky* Court applied each of the factors in the case before it, *Felisky* does not require that the ALJ engage in such an extensive analysis in every decision. *Bowman v. Chater,* No. 96-3990, 1997 WL764419 at *4 (6th Cir. Nov. 26, 1997). It does require that in addition to objective medical evidence the ALJ consider non-medical factors. *Id.*

SSR 96-7p provides that the Commissioner may not disregard a claimant's subjective statements concerning his ability to work "solely because they are not substantiated by objective medical evidence". *See, Saddler v. Commissioner of Social Security,* No. 98-5440, 1999 WL 137621 at *2 (6th Cir. Mar. 4, 1999)[173 F.3d 429 table], *citing,* SSR 96-7p. SSR 96-7p directs the Commissioner to provide "specific reasons" for making a credibility determination. *See, Spicer v. Apfel,* No. 00-5687, 2001 WL 845496 at *1 (6th Cir. July 16, 2001).

As an initial matter, the Court notes that Judge Lombardo properly identified and analyzed the applicable *Felisky* factors. PageID 62-63. Further, and as essentially noted above, the record contains few objective clinical findings and that Drs. Stone and Danopulos opined that Plaintiff was employable as did the reviewing physicians. Furthermore, the cardiac-related objective medical test results revealed, at worst, indications of an old infarct and the July, 2009, electrodiagnostic studies revealed, at worst, moderate carpal tunnel syndrome and no evidence of peripheral neuropathy. See PageID 621. In rejecting Plaintiff's allegations of disabling symptoms, Judge Lombardo noted that the objective test results revealed, at worst, moderate findings, that there were few objective clinical findings in the various medical experts' records and reports, and that Dr. Stone and Dr. Danopulos essentially determined that Plaintiff is

14

employable and that her alleged impairments would not impair her abilities to perform work-related activities. PageID 62-63. In addition, Judge Lombardo noted that the record contained no evidence of adverse side effects from treatments or medications, that Plaintiff engaged in various activities, and that while she alleged a disability onset date of 2001, there is no evidence of medical treatment prior to 2004. PageID 62.

Under these facts, the Commissioner did not err by failing to properly evaluate Plaintiff's credibility.

Plaintiff's final argument is that the Commissioner erred by relying on the VE's testimony because it was in response to an improper hypothetical question.

A hypothetical question must accurately portray the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). If a hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *see also, Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994). A hypothetical question need only include those limitations accepted as credible by the ALJ. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993). A vocational expert's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists. *Varley*, 820 F.2d at 779-80.

Plaintiff's position is that the hypothetical question which Judge Lombardo propounded to the VE was invalid because it did not include the limitations which Dr. Pandrangi described. However, as noted above, the Commissioner had an adequate basis for rejecting Dr. Pandrangi's opinion. Therefore, the Commissioner was not required to include those limitations in the

hypothetical question presented to the VE. *Casey, supra.* Accordingly, the Commissioner did not err by relying on the VE's testimony.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

J://socialsecurity/Vorwerck_SSD&SSI.docx

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).